DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

PATRICK K. O'BRIEN (CABN 292470)
KAREN KREUZKAMP (CABN 246151)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7126
    FAX: (415) 436-7234
    Patrick.OBrien@usdoj.gov
    Karen.Kreuzkamp@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 20-CR-00328-3-WHO |
| Plaintiff, | **UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR PRETRIAL DETENTION OF DEFENDANT OSCAR GUADRON DIAZ** |
| v. | |
| FERNANDO MADRIGAL,<br>    a/k/a "Nando,"<br>ALVARO REINA CORDERO,<br>    a/k/a "G-Boy," and<br>OSCAR GUADRON DIAZ,<br>    a/k/a "Cutty," | |
| Defendants. | |

## I. INTRODUCTION

Defendant Oscar Guadron Diaz, a/k/a "Cutty," is a danger to the community. Guadron Diaz and his two codefendants are charged in a superseding indictment with racketeering conspiracy based on their membership and participation in the San Francisco Mission District (SFMD) Norteños, a criminal enterprise responsible for multiple acts of violence in and around San Francisco over the last several years. The superseding indictment alleges specific objects of the conspiracy, including the murder of actual and perceived rivals. Each of the defendants charged in the superseding indictment carried out that object. As alleged in the superseding indictment, on January 23, 2018, Guadron Diaz and Alvaro Reina Cordero, a/k/a "G-Boy," murdered Victim-1, whom they perceived as associating with a rival gang, and attempted to murder Victim-2, who suffered a gunshot wound to the face but survived. Codefendant Fernando Madrigal, a/k/a "Nando," is charged with the July 12, 2018 murder of Victim-3, whose remains were not recovered for over a year and a half after the murder, and the July 8, 2019 murder of Victim-4, a 15-year-old perceived by Madrigal to be a rival gang member.

The nature and circumstances of the offenses charged in this case aside, Guadron Diaz was recently convicted of a felony gun offense in this District following a half-day jury trial in early November of this year. That means the burden is on him to prove by clear and convincing evidence that he is not a danger or a flight risk. But regardless of who bears the burden of persuasion, there is clear and convincing evidence that Guadron Diaz is a danger to the community. Among other reasons, when the FBI searched the Oakland residence and car he shared with his girlfriend and one-year old child on December 10, 2020, agents found two extended rifle magazines in their bedroom, approximately 1.3 kilograms (gross weight) of marijuana in their bedroom divided into multiple bags, a loaded ghost gun with a Glock switch device that appears designed to make the gun fire fully automatic under the driver's seat of their car, over fifty rounds of assorted ammunition a couple of feet from their child's car seat in their car, two more ghost guns in the garage, over sixty rounds of assorted ammunition in the garage, an assault rifle buffer tube in the garage, and several more pounds of marijuana in the garage. Some marijuana and approximately eight rounds of ammunition were in a duffle bag in the garage along with a box with a well-known Norteño symbol on it, plastic baggies, and a scale. Guadron Diaz's girlfriend,

who is listed as a surety and custodian on his release bond in Case Number 19-CR-00230-EMC, denied knowing anything about these items. So did two other adult female roommates living at the residence. Based on where the items were recovered, the statements of other witnesses at the scene, Guadron Diaz's significant history of gang activity and firearms offenses, and his recent conduct, it is clear that the firearms, firearms parts, ammunition, and drugs belonged to Guadron Diaz. These are serious violations of Guadron Diaz's release conditions and they are particularly troubling given the guilty verdict at his jury trial just last month. They should give the Court no confidence whatsoever that Guadron Diaz will abide by any conditions if he is released pending trial in this case.

Guadron Diaz should be detained.

## II.    BACKGROUND

### A.    The Racketeering and Murder Case

This case originated with the filing of a criminal complaint on August 10, 2020, against Fernando Madrigal for use of a firearm in furtherance of a crime of violence resulting in death, in violation of 18 U.S.C. §§ 924(j)(1) and (2). Dkt. No. 1. The complaint focused on the July 8, 2019 murder of a 15-year-old, whom Madrigal perceived as being a rival from the Army Street gang. Although Guadron Diaz is not named in the complaint, the complaint affidavit describes the SFMD Norteño criminal enterprise and other examples of violent crimes and firearms-related offenses committed by SFMD Norteños. The complaint affidavit also describes a particular Instagram video posted by Madrigal less than two days before the murder in which Madrigal shows off a black rifle consistent with the murder weapon. Dkt. No. 1 ¶ 62. During the video, Madrigal points the camera to a table a few feet away from him where Guadron Diaz is sitting along with another individual known to be an SFMD Norteño and a third individual whose back is to the camera. *Id.* Guadron Diaz appeared in this video at a time when he was on pretrial release in this District in Case Number 19-CR-00230-EMC. The July 8, 2019 murder is also a part of the racketeering conspiracy case against Guadron Diaz. Madrigal was subsequently indicted on this charge on August 20, 2020. Dkt. No. 10.

On December 3, 2020, the grand jury returned a superseding indictment in Madrigal's case, adding racketeering conspiracy charges against Madrigal, Reina Cordero, and Guadron Diaz, in

violation of 18 U.S.C. § 1962(d); murder and attempted murder charges against Reina Cordero and Guadron Diaz in connection with a January 23, 2018 shooting in San Francisco, in violation of 18 U.S.C. §§ 924(j)(1), 924(c), and 2; a July 12, 2018 murder charge against Madrigal, in violation of 18 U.S.C. §§ 924(j)(1) and 2; and a possession of machinegun charge against Guadron Diaz, in violation of 18 U.S.C. § 922(o). Dkt. No. 28. The superseding indictment retains the original charge against Madrigal for the July 8, 2019 murder.

The racketeering conspiracy alleged in the superseding indictment spans from at least 2017 through the present. Dkt. No. 28 ¶¶ 12, 18. The superseding indictment alleges the means and methods by which Guadron Diaz, his codefendants, and other members and associates of the SFMD Norteños conducted the affairs of the enterprise, including through acts of violence, the use of firearms, and trafficking controlled substances and firearms. *Id.* ¶¶ 13a-c. The superseding indictment also describes some of the details regarding the January 23, 2018 shooting, including that it occurred near the intersection of Leese Street and Richland Avenue in San Francisco around 5:11 pm when other pedestrians and vehicles were in the area. *Id.* ¶ 15. Multiple shots were fired, killing Victim-1 and causing Victim-2 to suffer a gunshot wound to the face. *Id.* The superseding indictment also alleges that Reina Cordero and Guadron Diaz targeted Victim-1 because they believed he associated with the rival Sureño gang. *Id.* ¶ 15. According to the superseding indictment, the January 23, 2018 murder and attempted murder are among the conspiracy's overt acts. *Id.* ¶¶ 15-17.

The government incorporates the facts stated in the criminal complaint and the superseding indictment here and discusses those facts in the context of the Bail Reform Act below.

### B. The Obliterated Serial Number Case

On May 16, 2019, Guadron Diaz was indicted in Case Number 19-CR-00230-EMC, and charged with possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k); and possession of a machinegun, in violation of 18 U.S.C. § 922(o). The government moved for detention, but Guadron Diaz was released pending trial. After three status appearances in District Court, the government moved to dismiss without prejudice the machinegun charge, and Judge Chen granted the motion on October 25, 2019. More than one year later, Judge Chen presided over a 4.5 hour jury trial on

<305>

<306>

<307>

<308>

<309>

<310>

<311>

<312>

<313>

<314>

<315>

<316>

<317>

<318>

<319>

<320>

<321>

<322>

<323>

<324>

<325>

<326>

<327>

<328>

<329>

<330>

<331>

<332>

<333>

<334>

<335>

<336>

<337>

<338>

<339>

<340>

<341>

<342>

<343>

<344>

<345>

<346>

<347>

<348>

<349>

<350>

<351>

<352>

<353>

<354>

<355>

<356>

<357>

<358>

<359>

<360>

<361>

<362>

<363>

<364>

<365>

<366>

<367>

<368>

<369>

<370>

<371>

<372>

<373>

<374>

<375>

<376>

<377>

<378>

<379>

<380>

<381>

<382>

<383>

<384>

<385>

<386>

<387>

<388>

<389>

<390>

<391>

<392>

<393>

<394>

<395>

<396>

<397>

<398>

<399>

<400>

the obliterated serial number charge. At trial, members of the San Francisco Police Department Gang Task Force testified that, on January 25, 2018, they saw Guadron Diaz throw the firearm out of a moving car fleeing from the police. The jury returned a guilty verdict on November 3, 2020, and Guadron Diaz is scheduled to be sentenced on February 10, 2021. He remained on release pending his sentencing until he surrendered on a warrant issued in the racketeering and murder case at approximately 8:30 pm on December 13, 2020.

### III.   ARGUMENT

#### A.   Legal Standard

In the normal context of pretrial detention motions, the government bears the burden to establish by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government must establish risk of flight by only a preponderance of the evidence. *United States v. Cazares*, 445 F. Supp. 3d 425, 429 (N.D. Cal. 2020).

Where, as here, there is probable cause to believe that the defendant committed an offense under 18 U.S.C. § 924(c), there is a rebuttable presumption in favor of detention. *United States v. Sanchez*, No. 18-CR-00560-HSG-3, 2018 WL 6460323, at *2 (N.D. Cal. Dec. 9, 2018) (citing 18 U.S.C. § 3142(e)(3)(B)). "The presumption of detention shifts the burden of production to the defendant, but the ultimate burden of persuasion remains with the government." *Id.* (citing *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008)). Even when a defendant successfully rebuts the presumption, the presumption does not disappear entirely. *See Hir*, 517 F.3d at 1086. The court considers the factors in 18 U.S.C. § 3142(g), and the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to [the § 3142(g)] factors." *Hir*, 517 F.3d at 1086 (internal quotation marks and citation omitted).

This case is different, however, because it also involves a defendant who has been convicted of a felony and is awaiting sentencing. In that circumstance, the burden shifts to the defendant to prove by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released. 18 U.S.C. § 3143(a); Fed. R. Crim. P. 46(c).

### B.   Guadron Diaz Cannot Overcome the Presumption in Favor of Detention

This is a presumption case. Guadron Diaz is charged with two offenses under 18 U.S.C. § 924(c). *See* 18 U.S.C. § 3142(e)(3)(B). First, he is charged with the murder of Victim-1, in violation of 18 U.S.C. §§ 924(j)(1) and 2. Section 924(j)(1) simply provides for enhanced penalties for violations of § 924(c) that result in death, namely, a maximum penalty of death or life imprisonment. *See* 18 U.S.C. § 924(j)(1). Second, Guadron Diaz is charged with discharge of a firearm during and in furtherance of a crime of violence, specifically, the attempted murder of Victim-2, in violation of 18 U.S.C. § 924(c).

The Court must therefore presume at the outset "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). Guadron Diaz must come forward with some evidence rebutting the presumption.

Moreover, because Guadron Diaz has been convicted of a felony and is awaiting sentencing, the burden is also on him to prove by clear and convincing evidence that he is not likely to flee or pose a danger to the community. 18 U.S.C. § 3143(a); Fed. R. Crim. P. 46(c).

The government will address any specific evidence Guadron Diaz offers if and when he offers it and may supplement this memorandum with additional information at the detention hearing. But for the reasons explained below, Guadron Diaz cannot overcome the presumption in favor of detention in this case.

### C.   Guadron Diaz Should Be Detained as a Danger to the Community

Guadron Diaz should be detained first and foremost because he poses a significant danger to the community.

The nature and circumstances of the offenses could not be more serious. *See* 18 U.S.C. § 3142(g)(1) (court must consider "nature and circumstances of offense[s] charged"). Victim-1 was gunned down because Guadron Diaz and Reina Cordero believed he associated with a rival gang. Dkt. No. 28 ¶ 15. Guadron Diaz is also charged with attempting to murder Victim-2, who was with Victim-1 and suffered a gunshot wound to the face but survived. *Id.* As alleged in the superseding indictment, Victim-1 and Victim-2 were shot just after 5:10 pm in a residential area in San Francisco when other

pedestrians and cars were present. *Id.* This shooting is just one of several acts of violence committed by the SFMD Norteños in furtherance of the racketeering conspiracy spanning from at least 2017 through the present. The superseding indictment also specifically alleges that Guadron Diaz, his codefendants, and other SFMD Norteños agreed that members and associates of the gang would commit acts of violence against rival gang members and individuals suspected of cooperating with law enforcement. *Id.* ¶¶ 4, 6, 8, 13, and 18.

In addition to the specific murder and attempted murder with which Guadron Diaz is currently charged, Guadron Diaz is linked to an April 8, 2019 gang-related shooting. Video evidence showed and witnesses described that the occupants of a black Mitsubishi registered to Guadron Diaz had a verbal argument with two pedestrians near the intersection of 26th and Shotwell, which is near the territory claimed by the Army Street gang, one of the SFMD Norteños' primary rivals. The pedestrians were affiliated with the Army Street gang. One of the pedestrians then pulled out a gun and fired at the vehicle and one of the vehicle's occupants fired back. The video showed a woman pushing a stroller in the area right before the shooting occurred, and a bystander was almost shot in the head in the crossfire.

Five days after this shooting, Guadron Diaz's Instagram account included messages with another user in which Guadron Diaz indicates he has firearms he can provide the other user:

- Other user: "u still got that"
- Guadron Diaz (Instagram account "900.sir"): "That one ?"
- Other User: "thass a 4 cinco?"
- Guadron Diaz: "Yesssirrr"
- Other user: "you dont have a 4 0"
- Other user: "which one is smaller?"
- Guadron Diaz: "They both the same"
- Guadron Diaz: "Only got one left"
- Other user: "which one"
- Guadron Diaz: "The bottom one"
- Other user: "the geezy 23?"

- Guadron Diaz: "Yea"
- Guadron Diaz: "They both 23 they twins"
- Other user: "I want it are you goin to the hood i need get at you in person"
- Guadron Diaz: "Shit na link somewhere out the hood"
- Other user: "fasho can wee meet around 8 im wit my baby and the fam at the lowrider shit on 2 fo"
- Other user: "lmk"
- Guadron Diaz: "Oh yup is good"

Moreover, the FBI's investigation into the July 8, 2019 murder remains ongoing, but that investigation uncovered a video posted in Madrigal's Instagram account on July 6, 2019, in which Madrigal shows off a black rifle consistent with the murder weapon used less than 48 hours later in the murder on July 8, 2019. In the video, Madrigal says, "Straight thugging. Didn't want to bring out the Glock, so I brought the mini chop," while showing the black rifle. Madrigal's video captures three individuals sitting at a nearby table in the same room. Law enforcement recognize two of the individuals at the table to be SFMD Norteños, one of whom is Guadron Diaz. Guadron Diaz appeared in this video at a time when he was on pretrial release in the obliterated serial number case.

In addition to the violent racketeering-related charges, the machinegun charge in this case is based on a machinegun that Guadron-Diaz possessed on January 25, 2018—and that was recovered from his residence along with evidence relating to the January 23, 2018 murder. That machinegun does not "serve[] any useful peaceful purpose to the average ordinary, law abiding civilian." *United States v. Colon Osorio*, 188 F. Supp. 2d 153, 154 (D.P.R. 2002). It is instead "designed to effectively cause immediate serious bodily harm or death." *Id.*

The penalties that Guadron Diaz faces in this case are also extremely serious. The racketeering conspiracy, murder, and attempted murder charges carry maximum prison sentences of life, and the murder charge is death-eligible. *See* 18 U.S.C. § 924(j)(1); 18 U.S.C. § 1963(a); *United States v. Dorsey*, 677 F.3d 944, 958 (9th Cir. 2012). Both the murder and attempted murder charges also carry a mandatory minimum prison term of 10 years.

Guadron Diaz's history and characteristics, moreover, weigh strongly in favor of detention. *See* 18 U.S.C. § 3142(g)(3) (court must consider "the history and characteristics of the person," including, criminal history and whether the person was on probation at the time of the current offense).

Guadron Diaz was charged in this District in May 2019 and allowed to remain on pretrial release. He is now a convicted felon following his November 2020 jury trial. He had every reason to demonstrate to the Court that he learned from his mistakes and will not commit new crimes. But items recovered from his residence by the FBI on December 10, 2020, prove just the opposite. They show that Guadron Diaz has not taken his federal criminal case seriously or learned any lesson from his recent conviction. They also show he is not amenable to supervision.

On December 9, 2020, FBI agents obtained a search warrant for an Oakland residence and a Honda HR-V at that residence registered to Guadron Diaz's mother (which is the same car that Guadron Diaz and Reina Cordero used in the January 23, 2018 murder). Agents believed Guadron Diaz was living at the Oakland residence with his girlfriend. This Oakland residence is not the residence currently listed on Guadron Diaz's release bond in the obliterated serial number case. The government understands, however, that Pretrial Services was aware that Guadron Diaz had moved to the Oakland residence and had advised Guadron Diaz to work on getting formal approval from the Court regarding his move.[1]

Agents executed the search on December 10, 2020, and found several items that were clear violations of Guadron Diaz's release conditions and also independently unlawful for him or anyone to possess. In the bedroom that Guadron Diaz shared with his girlfriend, agents found Guadron Diaz's California ID, Guadron Diaz's debit card, posters depicting Guadron Diaz with deceased Norteño gang members, and most importantly, two extended rifle magazines and approximately 1.3 kilograms (gross weight) of marijuana divided up in multiple bags. *See* Appendix Photo 1. Guadron Diaz's girlfriend—who is listed as a surety and custodian on Guadron Diaz's release bond—denied knowing anything about the rifle magazines or marijuana.

---

[1] The government is troubled that nothing was communicated to the government about this move, including how it would impact the ability of Guadron Diaz's mother, father, and brother to continue to serve as custodians, as required by his bond.

In the Honda HR-V parked outside the residence, agents found a ghost gun under the driver's seat. The gun was loaded and had an attached Glock switch device that appears designed to make the gun fire fully automatic. *See* Appendix Photo 2. The middle seat in the second row of the car had an installed child's car seat. Within just a couple feet of the car seat, in the rear pocket of the front passenger seat, agents found a bag with approximately 58 rounds of assorted ammunition. *See* Appendix Photo 3. Agents also found mail addressed to Guadron Diaz in the HR-V's glove compartment. Agents observed Guadron Diaz and his girlfriend access the car in the days leading up to the search. As noted above, this car is registered to Guadron Diaz's mother and is the same car that law enforcement identified as being involved in the January 23, 2018 murder. Guadron Diaz's girlfriend told agents she knew nothing about the gun or ammunition in the car.[2]

In the garage, agents found a bag with two more ghost guns. *See* Appendix Photo 4. Agents also found approximately 57 rounds of ammunition and an assault rifle buffer tube in a bag next to an infant car seat. *See* Appendix Photo 5-6. In another duffle bag in the garage, agents found jars of marijuana, plastic baggies, a scale, approximately eight rounds of ammunition, and a box with a Huelga bird on it, which is a symbol used by the SFMD Norteños, Guadron Diaz's gang and the enterprise alleged in the superseding indictment. *See* Appendix Photo 7. Agents also found a different plastic bag with over a kilogram (gross weight) of marijuana. *See* Appendix Photo 8. Agents observed Guadron Diaz access the garage days before the search. Again, Guadron Diaz's girlfriend denied knowing anything about these items.

Guadron Diaz was not present at the time of the search and his girlfriend told agents she did not know where he was and would not say the last time she saw him. Two other female adults interviewed at the Oakland residence admitted to living there as well, but they denied knowing anything about the guns, ammunition, marijuana, or magazines found in the house, car, and garage, and none of these items were found in their bedroom.

---

[2] When confronted with firearm and ammunition in the car, Guadron Diaz's girlfriend said other people had accessed the car in the past.

All told, FBI agents found three guns, approximately 132 rounds of ammunition, multiple additional firearms parts, just under six kilograms (gross weight) of marijuana, indicia of drug distribution, and indicia of the SFMD Norteño gang on December 10, 2020. The evidence seized on December 10 bears a striking resemblance to the evidence seized from Guadron Diaz's residence on January 25, 2018, when SFPD searched his residence as part of the murder investigation. On that date, SFPD seized a fully automatic machinegun, approximately 250 rounds of 7.62 mm caliber ammunition, approximately nine rounds of .40 caliber ammunition, and other assorted ammunition. SFPD also seized multiple bags of marijuana within a larger trash bag weighing over 2 kilograms (gross weight). And SFPD found indicia of Guadron Diaz's membership in the SFMD Norteños, including drawings referring to "24th," the Mission District, the letter "N," the phrase "Love Never Stops" for the "LNS" clique, and a deceased Norteño.

What FBI agents found on December 10, 2020 is not only consistent with Guadron Diaz's continued active participation in the SFMD Norteños and history of possessing firearms but also with his conduct in the days leading up to this search. On December 6, 2020, FBI agents observed Guadron Diaz and another individual leave the Oakland residence through the garage and drive to a secluded ranch north of Ukiah, California, which the agents knew to be an area with a substantial presence of illegal marijuana grows. As noted above, agents found a large quantity of marijuana in Guadron Diaz's bedroom and garage totaling just under six kilograms (gross weight). Agents also found indicia of drug distribution, including plastic bags, a scale, and ammunition, in a duffle bag that also contained a Norteño symbol tying that bag and its contents to Guadron Diaz.

Given the results of the December 10, 2020 search, none of Guadron Diaz's existing custodians and sureties—his girlfriend, mother, father, and brother—appears to be viable going forward. The only custodian he was living with—his girlfriend—either lied to the FBI about the last time she saw Guadron Diaz, or she actually did not know his whereabouts and he was not staying with her consistently even though he had told Pretrial Services he had moved there. She also either lied about what she knew of the firearms, ammunition, and drugs found in the bedroom, car, and garage that she shared with Guadron Diaz, or she has no ability to supervise him. And Guadron Diaz was no longer living with his mother,

father, and brother in San Francisco, unbeknownst to the government or the Court. Even assuming his family and girlfriend did their best to keep Guadron Diaz on the right track, they simply have been unsuccessful in doing so.

The violations of Guadron Diaz's release conditions uncovered on December 10, 2020, are stark. They are "direct evidence" of his "unwillingness to abide by court orders." *Sanchez*, 2018 WL 6460323, at *3. Any release conditions, moreover, would only be as good as Guadron Diaz's "good faith compliance" with those conditions. *See Hir*, 517 F.3d at 1092-93. Guadron Diaz has clearly been successful in deceiving the Court and Pretrial Services about his compliance while his prior criminal case was pending. But based on what FBI agents found on December 10, the Court should have no confidence whatsoever in Guadron Diaz's ability or willingness to comply in good faith with any conditions of release going forward.

Finally, there is clear and convincing evidence that Guadron Diaz poses a serious risk of physical harm or death to others in the community if he is released. *See* 18 U.S.C. § 3142(g)(4) (court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release"). Guadron Diaz is charged with killing Victim-1 and attempting to kill Victim-2. Victim-1 and Victim-2 were gunned down at a time when other pedestrians and cars were around. Guadron Diaz is a member of a violent street gang that is in large part defined by the violence of its members, and he is linked to at least two shootings. And Guadron Diaz's history of firearms possession, which continued through the date of the search, is dangerous in its own right.

In sum, there are no conditions the Court could fashion that would protect the community from Guadron Diaz.

**D.   Guadron Diaz Should Be Detained as a Serious Risk of Flight**

In addition to the danger Guadron Diaz poses, he should be detained as a risk of flight.

Given the nature of the charges, the Court must begin with a presumption that no combination of conditions will assure Guadron Diaz's appearance. 18 U.S.C. § 3142(e)(3). But more importantly, given Guadron Diaz's status as a person found guilty in his obliterated serial number case, he must prove by clear and convincing evidence that he will not flee prosecution.

Although Guadron Diaz appeared for prior court appearances in his obliterated serial number case, the stakes are considerably higher and he has a much greater incentive to flee in this case. *See United States v. Gonzales,* 995 F. Supp. 1299, 1302 (D.N.M. 1998) (death penalty creates "strong incentive to flee prior to trial"). Moreover, when the FBI searched the house where Guadron Diaz was living with his girlfriend, Guadron Diaz was not there. The FBI did not know where Guadron Diaz was, and his girlfriend would not say when she last saw him or where he was, so the government alerted Guadron Diaz's criminal defense lawyer on Thursday December 10, 2020, and Guadron Diaz's Pretrial Services Officer on Friday December 11, 2020, both of whom said they would contact Guadron Diaz and his family and ask Guadron Diaz to turn himself in. Guadron Diaz did not surrender until after 8 pm on Sunday evening, December 13, 2020. Because it is Guadron Diaz's burden following his felony conviction, the Court should require proof about where Guadron Diaz was, where he was living, and why he did not surrender immediately before concluding he has met his burden to show he will not flee. And for the reasons explained above, none of his existing custodians appear to be viable, so having them sign on to a bond will not assure Guadron Diaz's appearance.

## IV. CONCLUSION

For the reasons explained above, release—no matter how stringent the conditions imposed—will not reasonably assure the safety of the community or Guadron Diaz's appearance as required. Accordingly, Guadron Diaz should be detained.

DATED: December 20, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

*/s/ Patrick O'Brien*
PATRICK K. O'BRIEN
Assistant United States Attorney

UNITED STATES' MEMO. ISO
MOT. FOR PRETRIAL DETENTION            13
20-CR-00328-3-WHO

# APPENDIX

**Photo 1:** Rifle magazines and several bags of suspected marijuana seized on December 10, 2020, from bedroom with Guadron Diaz's ID and other indicia associated with Guadron Diaz at Oakland residence



**Photo 2:** Ghost gun with attached "switch" device and loaded magazine seized from under driver's seat of Honda HR-V on December 10, 2020



**Photo 3:** Ammunition seized from rear pocket of front passenger seat of Honda HR-V across from child's car seat on December 10, 2020



**Photo 4:** Two ghost guns recovered from the garage on December 10, 2020

**Photo 5:** Bag containing ammunition and assault rifle buffer tube near infant car seat

**Photo 6:** Ammunition and assault rifle buffer tube seized from bag near infant car seat in garage (Photo 5) on December 10, 2020

**Photo 7:** Wood box with Huelga bird, a known Norteño symbol, on it, which was found inside the black Adidas duffle bag alongside approximately 8 rounds of ammunition, jars of suspected marijuana, scale, and plastic baggies, all of which were seized on December 10, 2020



**Photo 8:** Bags of suspected marijuana seized seized from garage on December 10, 2020